**No. 25-2226**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

COMCAST CORPORATION;
COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,

*Plaintiffs-Appellants,*

v.

UNITED STATES DEPARTMENT OF LABOR;
LORI CHAVEZ-DEREMER, in her official capacity as Secretary of the
United States Department of Labor; WILLIAM P. FARLEY, in his official
capacity as Administrative Law Judge,

*Defendants-Appellees.*

On Appeal from the United States District Court for the
Eastern District of Virginia

### BRIEF FOR APPELLEES

BRETT A. SHUMATE
  *Assistant Attorney General*

MICHAEL S. RAAB
DAVID L. PETERS
DANIEL AGUILAR
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-5432*

**TABLE OF CONTENTS**

**Page**

STATEMENT OF JURISDICTION..................................................................1

STATEMENT OF THE ISSUE.......................................................................1

STATEMENT OF THE CASE .......................................................................1

I.    Statutory Background..........................................................................1

II.   Factual Background And Prior Proceedings........................................ 4

SUMMARY OF ARGUMENT ...................................................................... 7

STANDARD OF REVIEW ............................................................................ 9

ARGUMENT................................................................................................ 10

The District Court's Judgment Should Be Reversed .................................. 10

    A.    The Seventh Amendment Framework ......................................... 10

    B.    This Case Presents Several Unique Features that, in
          Combination, Require a Jury Trial under the Seventh
          Amendment .................................................................................13

CONCLUSION.............................................................................................21

CERTIFICATE OF COMPLIANCE

**TABLE OF AUTHORITIES**

**Cases:**                                                          **Page(s)**

*1616 Reminc Ltd. Partnership v. Atchison & Keller Co.,*
704 F.2d 1313 (4th Cir. 1983) .................................................................. 12

*Atlas Roofing Co. v. Occupational Safety & Health Review
Commission,*
430 U.S. 442 (1977) .................................................................. 12

*Barbour v. Merrill,*
48 F.3d 1270 (D.C. Cir. 1995) .................................................................. 16

*Bennett v. R&L Carriers Shared Services, LLC,*
492 F. App'x 315 (4th Cir. 2012) .................................................................. 16

*Bresler v. Wilmington Trust Co.,*
855 F.3d 178 (4th Cir. 2017) .................................................................. 15

*City of Arlington v. FCC,*
569 U.S. 290 (2013) .................................................................. 10

*Continental Airlines, Inc. v. Administrative Review Board,*
638 F. App'x 283 (5th Cir. 2016) (per curiam) .................................................................. 19

*Crawford v. Washington,*
541 U.S. 36 (2004) .................................................................. 20-21

*Duke v. Uniroyal Inc.,*
928 F.2d 1413 (4th Cir. 1991) .................................................................. 16, 20

*Ex parte Bakelite Corp.,*
279 U.S. 438 (1929) .................................................................. 14

*Granfinanciera, S.A. v. Nordberg,*
492 U.S. 33 (1989) .................................................................. 8, 11, 17-18

*In re Forrand,*
2021 WL 423981 (ARB Jan. 4, 2021) .................................................................. 19

*Lawson v. FMR LLC,*
571 U.S. 429 (2014) .................................................................. 1, 2, 20

*Murray v. UBS Securities, LLC,*
    601 U.S. 23 (2024) ............................................................................... 20

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,*
    458 U.S. 50 (1982) ........................................................................... 8, 17

*Northrop Gruman Systems Corp. v. U.S. Department of Labor,*
    927 F.3d 226 (2019) .............................................................................. 15

*Oceanic Steam Navigation Co. v. Stranahan,*
    214 U.S. 320 (1909) ............................................................................. 13

*Oil States Energy Services, LLC v. Greene's Energy Group, LLC,*
    584 U.S. 325 (2018) ..................................................................... 8, 10, 11

*Seabrook v. Driscoll,*
    148 F.4th 264 (4th Cir. 2025) ............................................................... 9

*SEC v. Jarkesy,*
    603 U.S. 109 (2024) ............................................... 9, 10, 11, 12, 15, 18, 21

*Teutscher v. Woodson,*
    835 F.3d 936 (9th Cir. 2016) ............................................................... 16

*Thomas v. Union Carbide Agricultural Products Co.,*
    473 U.S. 568 (1985) ..................................................................... 13, 14, 18

*Yates v. United States,*
    574 U.S. 528 (2015) ............................................................................... 1

*Yellow Freight System, Inc. v. Martin,*
    983 F.2d 1195 (2d Cir. 1993) ............................................................... 19

## Constitution and Statutes:

U.S. Const. amend. VII ............................................................................ 7

Federal Railroad Safety Authorization Act of 1980,
    Pub. L. No. 96-423, 94 Stat. 1811 ....................................................... 3

Sarbanes-Oxley Act of 2002,
    Pub L. No. 107-204, 116 Stat. 745 ....................................................... 1

Surface Transportation Assistance Act of 1982,
Pub. L. No. 97-424, 96 Stat. 2097 ....................................................... 3

Wendell H. Ford Aviation Investment and Reform Act for the
21st Century,
Pub. L. No. 106-181, 114 Stat. 61 (2000) ................................... 3

5 U.S.C. § 7521 ..................................................................... 21

15 U.S.C. § 2622 ...................................................................... 3

18 U.S.C. § 1348 ............................................................... 6, 7

18 U.S.C. § 1514A ................................................................... 2

18 U.S.C. § 1514A(b) ............................................................. 4

18 U.S.C. § 1514A(b)(1)(B), (b)(2)(E) ....................................... 18

18 U.S.C. § 1514A(b)(2) ......................................................... 19

18 U.S.C. § 1514A(c)(2)(A) .................................................... 20

18 U.S.C. §§ 1341, 1343, 1344, 1348 ........................................ 2

28 U.S.C. § 1291 ..................................................................... 1

28 U.S.C. § 1331 ..................................................................... 1

30 U.S.C. § 815(c) .................................................................... 3

42 U.S.C. § 5851 ...................................................................... 3

49 U.S.C. § 1514A(b)(1)(B) ...................................................... 4

49 U.S.C. § 1514A(b)(2)(E) ....................................................... 4

49 U.S.C. § 1514A(c) ................................................................ 4

49 U.S.C. § 20109 .................................................................... 3

49 U.S.C. §§ 20109, 31105 ......................................................19

49 U.S.C. §§ 20109(d)(4), 31105(d), 42121(b)(4) ....................... 3

iv

49 U.S.C. §§ 20109(d), 31105(b), 42121(b) ................................................... 3

49 U.S.C. § 31105 ................................................................................. 3

49 U.S.C. § 42121 ............................................................................ 3, 19

49 U.S.C. § 42121(b) ........................................................................ 4, 19

49 U.S.C. § 60129 ................................................................................. 3

**Other:**

Harold J. Krent,
  *Presidential Control of Adjudication Within the Executive Branch*,
  65 Case W. Res. L. Rev. 1083 (2015) ...................................................... 10

Petition for a Writ of Certiorari,
  *Department of Labor v. Sun Valley Orchards, LLC*,
  No. 25-966 (U.S. Feb. 12, 2026) ............................................................ 14

Restatement (Second) of Contracts ......................................................... 15

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331. JA12. The district court dismissed plaintiffs' complaint for failure to state a claim on September 23, 2025. JA123-124. Plaintiffs filed a notice of appeal on October 7, 2025. JA125. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the underlying claims against Comcast require a jury trial under the Seventh Amendment.

## STATEMENT OF THE CASE

### I.     Statutory Background

**A.** Congress enacted the Sarbanes-Oxley Act of 2002, Pub L. No. 107-204, 116 Stat. 745, to "protect investors and restore trust in financial markets following the collapse of Enron Corporation." *Yates v. United States*, 574 U.S. 528, 532 (2015).[1] "Of particular concern to Congress was abundant evidence that Enron had succeeded in perpetuating its massive shareholder fraud in large part due to a 'corporate code of silence." *Lawson v. FMR LLC*, 571 U.S. 429, 435 (2014). "[T]hat code, Congress found,

---

[1] Enron had engaged in "massive accounting fraud" and its "outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents." *Yates*, 574 U.S. at 535-36.

discourage[d] employees from reporting fraudulent behavior not only to the proper authorities, such as the FBI and the SEC, but even internally." *Id.* (quotation marks omitted).  When employees "attempted to report corporate misconduct, Congress learned, they faced retaliation, including discharge." *Id.*  At the time of Enron's misdeeds, the company's "efforts to 'quiet' whistleblowers generally were not proscribed under then-existing law." *Id.*  Congress concluded that this "lack of whistleblower protection" was "a significant deficiency in the law, for in complex securities fraud investigations, employees are [often] the only firsthand witnesses to the fraud." *Id.* (quotation marks omitted).

The Sarbanes-Oxley Act thus contained a provision to address these concerns, entitled "Protection for Employees of Publicly Traded Companies Who Provide Evidence of Fraud." *Lawson*, 571 U.S. at 435.  That provision is codified at 18 U.S.C. § 1514A, and prohibits companies regulated under the federal securities laws from retaliating against employees for providing information to Congress, a federal agency, or "a person with supervisory authority over the employee" that concerns "any conduct which the employee reasonably believes constitutes a violation" of 18 U.S.C. §§ 1341, 1343, 1344, 1348, or the federal securities laws.

2

Congress modeled this whistleblower provision on pre-existing statutes that prohibit railroad operators, commercial motor vehicle carriers, and airline carriers from retaliating against employees who report violations of federal safety laws. *See, e.g.*, Federal Railroad Safety Authorization Act of 1980, Pub. L. No. 96-423 § 10, 94 Stat. 1811, 1815 (codified at 49 U.S.C. § 20109); Surface Transportation Assistance Act of 1982, Pub. L. No. 97-424 § 405, 96 Stat. 2097, 2157 (codified at 49 U.S.C. § 31105); Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, Pub. L. No. 106-181 § 519, 114 Stat. 61, 145 (2000) (codified at 49 U.S.C. § 42121). Under those statutes, employees who suffer retaliation for reporting such safety violations can file a complaint with the Secretary of Labor. 49 U.S.C. §§ 20109(d), 31105(b), 42121(b). The Secretary may investigate the claim, hold a hearing, and issue corrective orders (including orders for damages and back pay). *Id.* §§ 20109(e), 31105(b)(3), 42121(b)(3). A party adversely affected by the Secretary's order can seek review in the courts of appeals in a manner consistent with the Administrative Procedure Act. *Id.* §§ 20109(d)(4), 31105(d), 42121(b)(4).[2]

---

[2] Congress has enacted similar anti-retaliation provisions for employees in other industries who report federal safety violations concerning nuclear reactors, 42 U.S.C. § 5851, fuel pipelines, 49 U.S.C. § 60129, toxic substances, 15 U.S.C. § 2622, mining activity, 30 U.S.C. § 815(c), and other matters.

3

Congress incorporated these procedures into the Sarbanes-Oxley Act's whistleblower provision. 18 U.S.C. § 1514A(b) (cross-referencing 49 U.S.C. § 42121(b)). In an administrative action, the Secretary has authority to issue corrective orders, including reinstatement, back pay, and damages. *Id.* § 1514A(c). If the Secretary does not issue "a final decision within 180 days," the employee may "bring[] an action at law or equity for de novo review in the appropriate district court of the United States." *Id.* § 1514A(b)(1)(B). In such a district court action, the parties "shall be entitled to trial by jury." *Id.* § 1514A(b)(2)(E).

## II.    Factual Background And Prior Proceedings

**A.** In 2019, plaintiff Comcast acquired a cybersecurity company called BluVector for approximately $30 million. JA45. At the time, Lawrence Gloss and Travis Rosiek served as BluVector executives. JA13-14, JA44-45. Gloss and Rosiek assert that, as part of the acquisition, Comcast promised to pay them "corporate salaries" for continuing to work at Comcast and "incentive compensation," *i.e.*, additional money based on how well BluVector continued to perform as a Comcast subsidiary. JA45-48. Gloss and Rosiek assert that based on BluVector's performance, by 2021 they were entitled to $250 million based on Comcast's promise for incentive payments. JA48.

4

Gloss and Rosiek contend, however, that Comcast never fulfilled its contractual promises to pay them these millions in incentives. JA48. Instead, by "late May/early June of 2021," Gloss and Rosiek allege that "Comcast personnel concocted a scheme to renege on Comcast's liability and obligation to pay" Gloss and Rosiek their promised incentives. JA47-48. Gloss and Rosiek allege that by "late 2021," after Comcast had still not paid them their millions owed, they began to raise concerns that Comcast had "violated federal securities laws" by failing to identify these payment obligations on its "consolidated financial statements." JA48-49. Gloss and Rosiek assert that after they raised these concerns "via the company's internal reporting channels," Comcast took retaliatory actions against them culminating in their constructive termination. JA49-50.

**B.** Based on these allegations, Gloss and Rosiek filed administrative complaints with the Secretary of Labor, citing the Sarbanes-Oxley Act's whistleblower provision. JA100. Gloss and Rosiek requested that the Secretary order Comcast to pay them "their respective portions of the incentive compensation liability according to the proof adduced at trial." JA59.

Department of Labor staff investigated these allegations and stated that they were "unable to conclude that there is reasonable cause to believe

5

that a violation" of the Act occurred. JA15. Gloss and Rosiek contested that conclusion and asked for an evidentiary hearing before an administrative law judge (ALJ). JA101. Comcast asked the ALJ to dismiss the administrative complaint, which the ALJ declined to do. JA28-30. The ALJ explained that, taking the allegations as true, Gloss and Rosiek reasonably believed that Comcast violated the criminal prohibition on securities fraud, 18 U.S.C. § 1348, by "not reporting what * * * could be hundreds of millions of dollars" in promised incentives. JA29.

**C.** Comcast thereafter sued the Secretary, the Department of Labor, and the ALJ in district court, arguing that the administrative proceeding was unconstitutional and should be enjoined. JA7-23 (complaint). As relevant here, Comcast argued that Gloss and Rosiek's complaint was a "common-law claim for breach of contract or promissory estoppel" that was not designed to "recover for any retaliation," JA18, and so required a jury trial under the Seventh Amendment, JA16.[3]

The federal defendants moved to dismiss Comcast's suit, arguing—as relevant here—that the Seventh Amendment did not apply because Gloss and Rosiek's claims were designed to make them whole and were thus

---

[3] The underlying administrative proceedings have been stayed pending the resolution of this litigation.

6

equitable in nature. Dkt. 24, at 14-17. Defendants further argued that the underlying claims involve public rights that Congress can constitutionally direct the Executive Branch to adjudicate. *Id.* at 17-20.

The district court agreed with defendants on both points. The court first held that "the Sarbanes-Oxley claims at issue are equitable for purposes of the Seventh Amendment" and therefore did not require a jury trial. JA116. The court then held that the Sarbanes-Oxley Act "is novel and closely integrated into a regulatory scheme" such that "it does not implicate purely private rights." JA118-119. The court concluded that Comcast was not entitled to relief on its remaining claims, JA119-123, and dismissed the complaint, JA124.

## SUMMARY OF ARGUMENT

The federal defendants respectfully ask the Court to reverse and remand with instructions to enter judgment in Comcast's favor on its Seventh Amendment claim.

The Seventh Amendment preserves the right to jury trials for "Suits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII. That right extends to "actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century."

7

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989).  And it encompasses matters of private right—that is, "the liability of one individual to another under the law as defined," such as "contract damages," *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69-71 (1982).  But the Seventh Amendment does not require a jury trial for matters of public right—*i.e.*, "matters 'which arise between the Government and persons subject to its authority in connection with the performance of'" constitutional functions.  *Oil States Energy Services, LLC v. Greene's Energy Group, LLC*, 584 U.S. 325, 334, 344-45 (2018).

This case presents a unique combination of factors that, taken together, require this case to be decided by a jury rather than by the Secretary of Labor.  Gloss and Rosiek's allegations, at their core, are that Comcast promised to pay them millions of dollars and that Comcast failed to do so.  Comcast's obligations to pay Gloss and Rosiek do not stem from any federal regulatory scheme, nor does Comcast's failure to pay independently violate federal law.  Rather, Gloss and Rosiek have presented a breach of contract dispute and—as a jurisdictional hook—alleged that Comcast's failure to pay them derivatively violated the securities laws.  That is not sufficient to turn this ordinary contract dispute between private parties into a matter of public rights that can be decided without a jury.

8

The unique facts of this case make the application of the Seventh Amendment quite narrow. Reversing the district court's judgment here would not cast any doubt on federal whistleblower statutes generally, which concern matters of public right, such as ensuring the safety of the channels and instrumentalities of interstate commerce. Nor would it require the Court to consider the Seventh Amendment's application to other adjudications under the Sarbanes-Oxley Act's whistleblower provision where, for example, an employee might allege to have been unlawfully fired for reporting an Enron-like scandal to federal investigators. Instead, the Court's holding would simply recognize that a defendant facing a common-law breach of contract suit for failing to make promised payments "has the right to be tried by a jury." *SEC v. Jarkesy*, 603 U.S. 109, 140 (2024).

The United States recognizes that the district court's judgment was consistent with and predicated on arguments advanced by the federal defendants in district court. Upon further consideration, the United States has concluded that these arguments were advanced in error, and we regret the inconvenience to the district court caused by this change of position.

## STANDARD OF REVIEW

This Court reviews the dismissal of a complaint de novo. *Seabrook v. Driscoll*, 148 F.4th 264, 269 (4th Cir. 2025).

9

## ARGUMENT

### THE DISTRICT COURT'S JUDGMENT SHOULD BE REVERSED

### A.      The Seventh Amendment Framework

The Constitution vests Article III courts with the judicial power of the United States. Throughout the Nation's history, it has been established that certain matters outside of the judicial power may be adjudicated by the Executive Branch. The first Congresses, for instance, tasked the Secretary of War with adjudicating whether veterans of the Revolutionary War were entitled to military pensions. *See* Harold J. Krent, *Presidential Control of Adjudication Within the Executive Branch*, 65 Case W. Res. L. Rev. 1083, 1089-90 (2015). Thus, "since the beginning of the Republic," executive officials have "conduct[ed] adjudications," which may take "'judicial' forms" but are ultimately "exercises of * * * the 'executive Power.'" *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013).

In delineating which matters require a jury trial (rather than adjudication with the Executive Branch), the Supreme Court has distinguished between "public rights" and "private rights." *Oil States Energy Services, LLC v. Greene's Energy Group, LLC*, 584 U.S. 325, 334 (2018). Private rights are "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789," *SEC v. Jarkesy*, 603 U.S. 109, 127-28 (2024) (quotation marks omitted), and private-right suits

10

concerning claims for damages or other legal remedies require a jury trial under the Seventh Amendment, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 51-52 (1989).  Accordingly, "[w]holly private tort, contract, and property cases, as well as a vast range of other cases" concern private rights where disputes must be decided by a jury.  *Id.* at 51.

By contrast, public rights concern cases "where the Government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights."  *Granfinanciera*, 492 U.S. at 51.  Familiar examples of public rights include taxation, immigration, tariffs, relations with Indian tribes, public lands, and public benefits.  *Jarkesy*, 603 U.S. at 128-30.  These matters do not involve "common law claims," and so "no involvement by an Article III court in the initial adjudication is necessary"—the matters can be determined by executive adjudicators, such as the Tax Court, the Social Security Administration, or an immigration judge.  *Id.* at 128.

The Supreme Court has not "'definitively explained' the distinction between public and private rights," *Oil States*, 584 U.S. at 334, and it "d[id] not claim to do so" in its most recent Seventh Amendment opinion, *Jarkesy*, 603 U.S. at 131.  Instead, the Court reiterated that "quintessential[] suits at common law," like a claim that one person

11

defrauded another, remain private rights. *Id.* at 133. Thus, claims that "target the same basic conduct as common law fraud, employ the same terms of art, * * * operate pursuant to similar legal principles," and impose "a punitive remedy," must be adjudicated before a jury. *Id.* at 134-36. Accordingly, the Court held that the Securities and Exchange Commission could not impose civil penalties for federal securities laws violations—which were modeled directly on common law fraud—but rather must bring those claims in court before a jury. *Id.*

Likewise, it has long been established that "suits for damages for breach of contract * * * were suits at common law with the issues of the making of the contract and its breach to be decided by a jury." *Atlas Roofing Co. v. Occupational Safety & Health Review Commission*, 430 U.S. 442, 459 (1977); *accord 1616 Reminc Ltd. Partnership v. Atchison & Keller Co.*, 704 F.2d 1313, 1317 (4th Cir. 1983) (explaining that the "litigation here involves breach of contract * * * and other counts which are the stuff of the traditional actions at common law tried by the courts at Westminster in 1789.") (quotation marks omitted).

**B.    This Case Presents Several Unique Features that, in Combination, Require a Jury Trial under the Seventh Amendment**

**1.** Gloss and Rosiek's claims against Comcast present a combination of unusual circumstances. Gloss and Rosiek raise a dispute between private parties seeking to have the matter adjudicated before the Secretary of Labor; the government is not a party to the case, and the grievance at the heart of their dispute is an alleged breach of a private employment contract; Gloss and Rosiek allege that Comcast violated the securities laws by failing to acknowledge and report its payment obligations under the contract; Gloss and Rosiek therefore ask the Secretary to award them up to $250 million to fulfill Comcast's contractual obligations.

By comparison, most cases concerning public rights involve the United States as a party. *See, e.g.*, *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 335-40 (1909) (civil penalty imposed by the Secretary of Commerce and Labor to enforce the immigration laws). And even when the United States is not a party, the Executive Branch may often resolve disputes between private parties when they are "an integral part" of a statutory scheme addressing public rights. *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 589 (1985). Thus, for example, "an essentially adversary proceeding to invoke tariff protections against a

13

competitor" concerns public rights and can be "conclusively determined by the Executive and Legislative Branches." *Id.* at 588-89 (citing *Ex parte Bakelite Corp.*, 279 U.S. 438, 447 (1929)).

Those usual predicates, however, are not present here. This is not an enforcement action brought by the federal government against Comcast for a violation of federal law.[4] Nor do Gloss and Rosiek allege substantive violations of the securities laws independent of their assertion that Comcast was required to—but did not—pay them as promised. The key foundation of their claim "depend[s] on * * * a right to such compensation under state law." *Union Carbide*, 473 U.S. at 584. While Gloss and Rosiek allege a violation of the federal securities laws, their claims are necessarily founded upon the original breach of contract: because Comcast failed to pay them the money they were promised, Comcast derivatively violated the securities laws by failing to include this contractual obligation in its financial statements. JA54-55.

---

[4] *Cf.* Petition for a Writ of Certiorari at 27-28, *Department of Labor v. Sun Valley Orchards, LLC*, No. 25-966 (U.S. Feb. 12, 2026) (explaining how federal enforcement of the immigration laws for alien laborers is a matter of public rights, not analogous to a breach of contract).

That claim sounds in the common law, and has only a threadbare connection to the federal securities laws.[5]  The gravamen of Gloss and Rosiek's administrative complaint is that Comcast must give them "the benefit of [the] bargain" and that the Secretary should award them "a sum of money that will, to the extent possible, put [them] in as good a position as he would have been in had the contract been performed."  Restatement (Second) of Contracts § 347, Comment *a*, at 112.  That is "the standard remedy for a breach of contract claim"—Gloss and Rosiek seek to have Comcast pay them "the amount of money that would put [them] in the same position as if the breaching party had fulfilled [its] contractual obligations."  *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 199 (4th Cir. 2017).

---

[5] As this Court has noted, the Sarbanes-Oxley whistleblower provision covers employees who report "six enumerated categories" of information, all of which "relate to fraud."  *Northrop Grumman Systems Corp. v. U.S. Department of Labor*, 927 F.3d 226, 229 (2019).  The Supreme Court explained that fraud provisions that "target the same basic conduct as common law fraud, employ the same terms of art, and operate pursuant to similar legal principles" concern "private rather than public right[s]." *Jarkesy*, 603 U.S. at 134.  This case, however, does not present the question of whether the Sarbanes-Oxley whistleblower provision categorically encompasses public or private rights.  Instead, it is "the anomalous nature" of Gloss and Rosiek's claims, "and not the SOX scheme in its ordinary operation, that creates the *Jarkesy* problem."  Opening Br. 22-23 & n.2.

The district court erred in classifying Gloss and Rosiek's request for $250 million as a claim for "front pay," which is an equitable rather than a legal remedy. JA112-114; *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1424 (4th Cir. 1991). Front pay acts as a "substitute or a complement" to an order reinstating a wrongly fired plaintiff to her former position. *Duke*, 928 F.2d at 1424. Front pay may be appropriate when reinstatement is not immediately possible, when the plaintiff is near retirement, or when the employment relationship is "irreparably damaged." *Id.* at 1423-24. Thus, when reinstatement is not possible, front pay represents the future earnings that the plaintiff would have received had she continued to work for the defendant. An award of front pay therefore requires certain information, including "the length of time the plaintiff expects to work for the defendant," *Barbour v. Merrill*, 48 F.3d 1270, 1279 (D.C. Cir. 1995), and the "wages and benefits" that the plaintiff would have earned, *Teutscher v. Woodson*, 835 F.3d 936, 946 (9th Cir. 2016). *Accord Bennett v. R&L Carriers Shared Services, LLC*, 492 F. App'x 315, 336 (4th Cir. 2012) (affirming front pay award based on estimated future earnings).

Gloss and Rosiek, however, did not ask for reinstatement or front pay in their administrative complaint. JA58-59. Indeed, Rosiek objected to disclosing "any information as to his post Comcast employment" because

16

he "does not seek lost wages" and is not "seek[ing] reinstatement and standard back pay (or front pay)." JA35-36. Instead, Gloss and Rosiek have asked the Secretary to make Comcast pay them "their respective portions of the incentive compensation," JA59, the percentage of BluVector's revenue growth after it was acquired by Comcast, JA46-47. That incentive pay was separate from Gloss and Rosiek's "Comcast corporate salaries." JA46. Nothing in the administrative complaint indicates that Comcast failed to pay those salaries before Gloss and Rosiek were constructively terminated, and the administrative complaint does not request back pay or front pay based on those salaries. Instead, they seek to have Comcast make good on its "promises made to Messrs. Gloss, Rosiek, and the BluVector team" to pay them millions in incentives based on how well BluVector continues to perform. JA46.

That claim to "recover contract damages," unconnected to any federal regulatory scheme, is "one of private right, that is" a claim determining "the liability of one individual to another" under the common law. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71-72 (1982). Accordingly, it is a claim that must be adjudicated by a jury under the Seventh Amendment. *Granfinanciera*, 492 U.S. at 51 ("Wholly private tort, contract, and property cases" are not matters of

17

public rights); *accord Jarkesy*, 603 U.S. at 140. The statute permits that possibility: if the Secretary has not issued a final decision on the administrative complaint within 180 days, an employee can file suit in district court and claim could be decided by a jury. 18 U.S.C. § 1514A(b)(1)(B), (b)(2)(E). Continued adjudication of this case by the Secretary is unwarranted and unconstitutional.

**2.** The analysis above is sufficient to dispose of this case. It is a narrow application of the Seventh Amendment and its relevant precedents, given the unique circumstances presented here. The Court need not decide the definitive scope of public and private rights, which the Supreme Court itself has declined to fix by categorical rule. *See Jarkesy*, 603 U.S. at 131 ("The Court 'has not "definitively explained" the distinction between public and private rights,' and we do not claim to do so today."); *Union Carbide*, 473 U.S. at 583 ("An absolute construction" of the public rights doctrine "is not possible in this area of 'frequently arcane distinctions and confusing precedents.'").

There is also no need for the Court to address the Seventh Amendment's application to other whistleblower statutes. Those statutes, not before the Court, concern substantively different areas of federal regulation that implicate uniquely federal interests. *See supra* p.3 & n.2.

18

In drafting the Sarbanes-Oxley Act, Congress modeled its whistleblower provisions on pre-existing protections for employees in interstate transportation industries. *See* 18 U.S.C. § 1514A(b)(2) (cross-referencing 49 U.S.C. § 42121(b)). Section 42121, for example, is designed "to encourage airline employees to report FAA violations" by "prohibit[ing] airlines from penalizing an employee who reports a violation." *Continental Airlines, Inc. v. Administrative Review Board*, 638 F. App'x 283, 287 (5th Cir. 2016) (per curiam). The statute prohibits airline operators from retaliating against employees who report safety violations, and directs the Secretary of Labor to adjudicate claims under the Act. 49 U.S.C. § 42121. But the statute "is not a general remedy for employment grievances unrelated to air safety." *In re Forrand*, 2021 WL 423981, at *2 n.8 (ARB Jan. 4, 2021). Similar employee protections exist for employees of railroads and commercial motor vehicle carriers. 49 U.S.C. §§ 20109, 31105. Those statutes concern the federal safety regulation for the channels and instrumentalities of interstate commerce, and the Secretary can appropriately adjudicate those matters of public rights. *Yellow Freight System, Inc. v. Martin*, 983 F.2d 1195, 1200-01 (2d Cir. 1993) (rejecting a Seventh Amendment challenge to secretarial adjudication of a whistleblower claim concerning the "safety on the nation's highways").

19

The Court also need not issue a categorical holding on whether more typical whistleblower claims brought under the Sarbanes-Oxley Act might require adjudication by a jury consistent with the Seventh Amendment. Different claims under the Act brought in a different context would be subject to different considerations.  For instance, an employee—instead of alleging that the company's financials were misstated because the employee had not been sufficiently paid—might allege that they had been pressured to falsify financial data presented to customers and regulated by the Securities and Exchange Commission.  *See Murray v. UBS Securities, LLC*, 601 U.S. 23, 28-29 (2024); *see also Lawson v. FMR LLC*, 571 U.S. 429, 437-38 (2014) (alleging retaliation for identifying inaccurate registration statements and accounting practices).  Instead of seeking damages for a breach of contract, an employee might simply seek reinstatement, 18 U.S.C. § 1514A(c)(2)(A), "which is clearly an equitable remedy," *Duke*, 928 F.2d at 1424.

The Court would be best positioned to consider such circumstances in a case presenting them, rather than attempting to create a categorical rule when this dispute can be resolved on case-specific grounds.  *Cf. Crawford v. Washington*, 541 U.S. 36, 68 (2004) ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'  Whatever

else the term covers, it applies at a minimum * * * to police interrogations."
(footnote omitted)).

\* \* \*

Because the Seventh Amendment claim "resolves this case," there is
no need for the Court to separately address the "two layers of for-cause
removal protections" for ALJs in 5 U.S.C. § 7521. *See Jarkesy*, 603 U.S. at
120-21 (declining to address the ALJ removal challenge "[s]ince the answer
to the jury trial question resolves this case").

## CONCLUSION

The district court's judgment should be reversed.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

MICHAEL S. RAAB
DAVID L. PETERS
 */s/ Daniel Aguilar*
DANIEL AGUILAR
  *Attorney, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-5432*
  *Daniel.J.Aguilar@usdoj.gov*

FEBRUARY 2026

21

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,301 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Georgia 14-point font, a proportionally spaced typeface.

_/s/ Daniel Aguilar_
Daniel Aguilar