No. 25-2226

# In the United States Court of Appeals for the Fourth Circuit

COMCAST CORPORATION; COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,

*Plaintiffs-Appellants*,

v.

UNITED STATES DEPARTMENT OF LABOR; KEITH E. SONDERLING, in his official capacity as Acting Secretary of the United States Department of Labor; WILLIAM P. FARLEY, in his official capacity as Administrative Law Judge,

*Defendants-Appellees*,

and

LAWRENCE GLOSS; TRAVIS ROSIEK,

*Intervenors.*

On Appeal from the U.S. District Court
for the Eastern District of Virginia, Alexandria Division
No. 1:24-cv-1401 (Hon. Patricia Tolliver Giles)

## REPLY BRIEF OF APPELLANTS

Sarah E. Bouchard
David C. Dziengowski
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000

Michael E. Kenneally
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-3000

Jeffrey B. Wall
Morgan L. Ratner
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W. Suite 700
Washington, DC 20006
(202) 956-7500

Jacob E. Cohen
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000

*Counsel for Appellants Comcast Corporation and
Comcast Cable Communications Management, LLC*

**TABLE OF CONTENTS**

Page

INTRODUCTION .........................................................................................................1

ARGUMENT ...............................................................................................................4

I.    COMCAST HAS A RIGHT TO A JURY TRIAL ON
      GLOSS'S AND ROSIEK'S CLAIMS...........................................................4

      A.    Gloss And Rosiek Cannot Evade The Seventh
            Amendment By Invoking The "Whistleblower" Label ..................4

      B.    Gloss And Rosiek Misapprehend The Public-Rights
            Doctrine....................................................................................................16

      C.    Despite DOJ's Agreement That The District Court
            Erred, This Appeal Remains Live .................................................22

II.   GLOSS AND ROSIEK DO NOT RESPOND TO
      COMCAST'S REMOVAL-PROTECTION CLAIM...............................23

CONCLUSION..........................................................................................................24

# TABLE OF AUTHORITIES

Page(s)

CASES

*Atlas Roofing Co.* v. *Occupational Safety & Health Rev. Comm'n*,
430 U.S. 442 (1977)..........................................................3, 17, 18

*Beacon Theatres, Inc.* v. *Westover*,
359 U.S. 500 (1959)..........................................................6

*C & O Motors, Inc.* v. *Gen. Motors Corp.*,
323 Fed. Appx. 193 (4th Cir. 2009)..........................................13

*Candlewood Timber Grp., LLC* v. *Pan Am. Energy, LLC*,
859 A.2d 989 (Del. 2004) ..........................................................9

*CFTC* v. *Schor*,
478 U.S. 833 (1986)..........................................................19, 20

*City of Monterey* v. *Del Monte Dunes at Monterey, Ltd.*,
526 U.S. 687 (1999)..........................................................11

*Curtis* v. *Loether*,
415 U.S. 189 (1974)..........................................................13

*Dairy Queen, Inc.* v. *Wood*,
369 U.S. 469 (1962)..........................................................1, 9

*Dimick* v. *Schiedt*,
293 U.S. 474 (1935)..........................................................6

*Douglass & Mandeville* v. *McAllister*,
7 U.S. 298 (1806)..........................................................18

*In re Ellison*,
296 F.3d 266 (4th Cir. 2002)..........................................15

*Feltner* v. *Columbia Pictures Television, Inc.*,
523 U.S. 340 (1998)..........................................................5

*Granfinanciera, S.A.* v. *Nordberg*,
492 U.S. 33 (1989)..............................................5, 6, 11, 12, 17, 19, 21

*Great-W. Life & Annuity Ins. Co.* v. *Knudson*,
534 U.S. 204 (2002)..............................................................7, 10

*Intuit, Inc.* v. *FTC*,
170 F.4th 411 (5th Cir. 2026) ...........................................................20

*Lebow* v. *Am. Trans Air, Inc.*,
86 F.3d 661 (7th Cir. 1996)................................................................9

*Louise Trauma Ctr. LLC* v. *U.S. Citizenship & Immigr. Servs.*,
147 F.4th 495 (4th Cir. 2025) ..........................................................23

*Middle E. Banking Co.* v. *State St. Bank Int'l*,
821 F.2d 897 (2d Cir. 1987) .............................................................13

*N. Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*,
458 U.S. 50 (1982)............................................................................16

*Oil States Energy Servs., LLC* v. *Greene's Energy Grp., LLC*,
584 U.S. 325 (2018)...........................................................................18

*Overwell Harvest, Ltd.* v. *Trading Techs. Int'l, Inc.*,
114 F.4th 852 (7th Cir. 2024) ...........................................................13

*Pons* v. *Lorillard*,
549 F.2d 950 (4th Cir. 1977)...............................................................9

*Ross* v. *Bernhard*,
396 U.S. 531 (1970)..............................................................................5

*Scott* v. *Neely*,
140 U.S. 106 (1891)............................................................................12

*SEC* v. *Jarkesy*,
603 U.S. 109 (2024)......................................................................*passim*

*Shepherd* v. *Hampton*,
16 U.S. 200 (1818)..............................................................................18

iii

*Simler* v. *Conner*,
   372 U.S. 221 (1963)..................................................................................6

*Tamosaitis* v. *URS Inc.*,
   781 F.3d 468 (9th Cir. 2015)....................................................................9

*Teamsters* v. *Terry*,
   494 U.S. 558 (1990)........................................................................6, 11, 12

*Tull* v. *United States*,
   481 U.S. 412 (1987)...............................................................................15

*Wellness Int'l Network, Ltd.* v. *Sharif*,
   575 U.S. 665 (2015)................................................................................20

**STATUTE**

18 U.S.C. § 1514A.........................................................................................21

**OTHER AUTHORITIES**

Dan B. Dobbs, Law of Remedies (1993)...................................................15

Doug Rendleman, *Measurement of Restitution: Coordinating
   Restitution with Compensatory Damages and Punitive
   Damages*, 68 Wash. & Lee L. Rev. 973 (2011) ........................................14, 15

Restatement (Second) of Contracts § 347 (1981) .......................................13

Restatement (Third) of Restitution and Unjust Enrichment § 1
   (2011) .......................................................................................................14

**INTRODUCTION**

The government now admits that Comcast has a Seventh Amendment right to a jury trial with respect to Gloss's and Rosiek's nominal "whistleblower" claims, and that those claims cannot be litigated in administrative proceedings before a Department of Labor ALJ. The Department of Justice (DOJ) thus agrees that the district court erred and that its order dismissing Comcast's complaint should be reversed. *See* DOJ Br. 7-9 (ECF 24). As DOJ appropriately observes (at 13), "Gloss and Rosiek raise a dispute between private parties" over "an alleged breach of a private employment contract." That contract claim is classically legal, and it does not implicate "public rights that can be decided without a jury." *Id.* at 8.

Intervenors Gloss and Rosiek disagree. They principally argue that the Seventh Amendment jury-trial right does not apply to their nominal whistleblower claims because what matters is how those claims are labeled. But *Jarkesy* held the exact opposite: "what matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled." *SEC* v. *Jarkesy*, 603 U.S. 109, 135 (2024). That rule reflects that "the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings." *Dairy Queen, Inc.* v. *Wood*, 369 U.S. 469, 477-478 (1962).

The substance of Gloss's and Rosiek's claims is clear. Gloss and Rosiek alleged to DOL that Comcast failed to pay them "incentive compensation" supposedly due before they were "constructively terminated." JA48, JA57-58. As they confirm here, their nominal SOX whistleblower complaint "allege[d] that Comcast did not record or disclose the associated compensation liabilities," Intervenor Br. 5 (ECF 32)—*i.e.*, Comcast already owed these supposed "liabilities" before the whistleblowing, and long before the supposed retaliation for the whistleblowing. Gloss and Rosiek seek "contract damages" for that pre-retaliation harm. DOJ Br. 17. That is a straightforward contract claim that "sounds in the common law." *Id.* at 15.

Gloss and Rosiek do not dispute any of that substance. Instead, they double-down on their form-over-substance approach, observing (at 10-11) that in its normal operation, the SOX whistleblower statute authorizes equitable relief. The fact that real whistleblowers sometimes seek real equitable remedies does not help Gloss and Rosiek. What matters is that *they* do not seek equitable remedies, such as reinstatement or (at most) front pay for the period after constructive termination. Gloss and Rosiek studiously avoid any mention of the relief they actually seek: incentive compensation that they claim was owed to them before any supposed whistleblowing.

2

Gloss and Rosiek fare no better on their argument about the public-rights doctrine. Like the dissent in *Jarkesy*, Gloss and Rosiek merely "chant[] '*Atlas Roofing [Co.* v. *Occupational Safety & Health Review Commission*, 430 U.S. 442 (1977)]' like a mantra." 603 U.S. at 138. They characterize *Atlas Roofing* as the "leading decision" on public rights, which broadly permits Congress to relegate to administrative tribunals any "statutory rights created within [a] federal regulatory program[]." Intervenor Br. 17, 23. That is not a fair description now (if it ever was). As *Jarkesy* made clear, "*Atlas Roofing* represents a departure from" the Supreme Court's public-rights cases. 603 U.S. at 138 n.4. *Jarkesy* is now the leading case on public rights. It held that "[e]ven when an action originates in a newly fashioned regulatory scheme, what matters is the substance of the action." *Id.* at 134 (quotation and alteration omitted). If the action is "made of the stuff of the traditional actions at common law," it "may not be removed from Article III courts." *Id.* at 128 (quotation omitted).

Finally, neither DOJ nor Gloss and Rosiek address Comcast's argument that the ALJ was unconstitutionally insulated from removal. That is an independent reason to reverse the district court's order dismissing Comcast's complaint. But the simplest path to avoid those complex removal issues is to

3

conclude that this thinly disguised contract suit cannot go to an ALJ in the first place—as both the government and Comcast now agree.

## ARGUMENT

### I.    COMCAST HAS A RIGHT TO A JURY TRIAL ON GLOSS'S AND ROSIEK'S CLAIMS.

Gloss's and Rosiek's claims for compensatory monetary damages for an alleged pre-retaliation breach of contract are quintessential claims at law. DOJ now agrees.  As it recognizes (at 9), this appeal is not a broadside attack on the SOX whistleblower system; instead, the "unique facts of this case" implicate Comcast's Seventh Amendment jury-trial right.  Gloss and Rosiek's reliance on mine-run whistleblower cases is beside the point.

#### A.    Gloss And Rosiek Cannot Evade The Seventh Amendment By Invoking The "Whistleblower" Label.

This $250 million contract claim does not belong in DOL administrative proceedings.  In trying to show otherwise, Gloss and Rosiek emphasize the whistleblower label they attached to their claims and gesture at the various equitable remedies available to SOX whistleblowers.  None of their arguments hits the mark.  They misconstrue the legal test under the Seventh Amendment, they bring a classically legal claim, and they do not seek equitable relief.

1.    Gloss and Rosiek correctly state that "determining whether the Seventh Amendment applies to a statutory claim requires courts to examine 'the nature of the statutory action and the remedy sought.'" Intervenor Br. 14 (quoting *Feltner* v. *Columbia Pictures Television, Inc.*, 523 U.S. 340, 348 (1998)). From there, however, they swerve off course, wrongly claiming (at 15) that courts must accept the whistleblower label they slapped on their claims and cannot consider the substance of their claims and requested remedies.

That is incorrect. The Supreme Court has made clear that "what matters is the substance of the suit," not "how it is labeled." *Jarkesy*, 603 U.S. at 135. Thus, contrary to Gloss and Rosiek's repeated contention (at 1, 10, 12, 13, 14, 15), "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency." *Granfinanciera, S.A.* v. *Nordberg*, 492 U.S. 33, 61 (1989). Instead, the Court must focus on "[t]he object of *this* [administrative] action" to determine its nature and the remedies sought. *Jarkesy*, 603 U.S. at 135 (emphasis added); *see Ross* v. *Bernhard*, 396 U.S. 531, 538 (1970) ("The Seventh Amendment question depends on the nature of the *issue* to be tried rather than the character of the overall action.") (emphasis added).

Even before *Jarkesy*, the Supreme Court carefully scrutinized the case before it rather than evaluating a generic case with the same label. For example:

- *Teamsters* v. *Terry*: The Court declined to evaluate "the nature of each element of a typical [labor law] claim," because "[t]he claim we confront here is not typical." 494 U.S. 558, 569 n.6 (1990) (plurality op.).

- *Simler* v. *Conner*: The Court declined to allow the action's "form [as] a declaratory judgment case . . . [to] obscure the essentially legal nature of the action," which "in its basic character [is] a suit" about "the amount of fees owing to a lawyer by a client under a . . . contract." 372 U.S. 221, 223 (1963).

- *Granfinanciera*: The Court rejected a comparison to generic fraudulent-conveyance claims, focusing instead on "suits to recover an allegedly fraudulent transfer of money, *of the sort that [plaintiff] has brought*." 492 U.S. at 44, 46 n.5 (emphasis added).

This careful parsing of the nature of the specific claim is critical to ensuring that the jury-trial right is not eroded, and consistent with the Supreme Court's repeated warning that "any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Beacon Theatres, Inc.* v. *Westover*, 359 U.S. 500, 501 (1959) (quoting *Dimick* v. *Schiedt*, 293 U.S. 474, 486 (1935)); *see Jarkesy*, 603 U.S. at 121 (same; quoting *Dimick*).

6

2.      The correct analysis looks at both the substance of the claims here and the nature of the relief sought. *See Jarkesy*, 603 U.S. at 135. In substance, Gloss and Rosiek bring a "claim for money due and owing under a contract," which is "quintessentially an action at law." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quotation omitted). In response, Gloss and Rosiek contend (at 16) that a breach-of-contract claim is not the appropriate historical analogue because, again in the abstract, "SOX's whistleblower provisions establish a statutory retaliation claim with elements wholly distinct from common-law contract liability." But the elements of a real whistleblower claim do not change the contractual nature of this case. In any event, Gloss's and Rosiek's claims would still be legal even under their preferred wrongful-discharge framing.

a.      Start with common ground. In a prototypical whistleblower action, "[a]n employee who reports securities fraud . . . and is discharged in retaliation . . . may prevail under § 1514A even if no contractual promise concerning compensation ever existed." Intervenor Br. 16. But as Gloss and Rosiek have previously admitted, "this is not a traditional SOX claim." JA35. In this case, the existence of an alleged contract and its supposed breach are the necessary predicates for their $250 million whistleblower claims. Gloss

7

and Rosiek allege that "Comcast made representations to BluVector executives and personnel regarding incentive compensation associated with the acquisition," and that they blew the whistle because Comcast did not pay them or record those "compensation liabilities in its financial statements." Intervenor Br. 5. If the alleged oral contract did not exist or was not breached, Gloss and Rosiek would have had nothing to blow the whistle about. As DOJ observes (at 14), their claims are thus "necessarily founded upon the original breach of contract."

Gloss and Rosiek's requested remedy reinforces that this case is contractual. They do not seek to "restore employees harmed by retaliation" (the remedy SOX authorizes), but to "enforce contractual expectations" (a remedy they concede is not allowed under SOX). Intervenor Br. 19. Specifically, they ask DOL to find in an administrative proceeding "[t]hat Comcast is obligated to pay [them] . . . the incentive compensation liability Comcast undertook to pay them and the BluVector team" in 2019, years before the supposed whistleblowing. JA58. Even more, they seek class-like relief, demanding payment to "each of [their] BluVector teammates" of the teammates' "respective portions of the incentive compensation liability," even though the teammates are not alleged to be whistleblowers who experienced

8

retaliation. JA59. That underscores that Gloss's and Rosiek's claims have nothing to do with supposed retaliation for whistleblowing and everything to do with an "action on a debt allegedly due under a contract." *Dairy Queen*, 369 U.S. at 477; *cf. Candlewood Timber Grp., LLC* v. *Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) ("In deciding whether or not equitable jurisdiction exists, the Court must ... focus upon the allegations of the complaint in light of *what the plaintiff really seeks to gain by bringing his or her claim*.") (emphasis added).

b.      In any event, even if the Court agreed with Gloss and Rosiek's preferred framing as a "retaliation claim," Intervenor Br. 16, that would not change the result. This Court long ago held that statutory wrongful-discharge actions "are analogous to the common law action for breach of contract by wrongful discharge or an action in tort," both of which are traditional legal actions. *Pons* v. *Lorillard*, 549 F.2d 950, 954 (4th Cir. 1977) (age-discrimination claim), *aff'd*, 434 U.S. 575 (1978); *see Lebow* v. *Am. Trans Air, Inc.*, 86 F.3d 661, 668 (7th Cir. 1996) (holding that "unlawful discharge claim is comparable to a common-law action for breach of an employment contract" and collecting cases); *Tamosaitis* v. *URS Inc.*, 781 F.3d 468, 486 (9th Cir. 2015) (holding that a statutory whistleblower claim is "analogous to a wrongful

9

discharge claim at common law" that would have "been treated as legal and not equitable").

3.  Whatever the best common-law analogy for the substantive cause of action, the remedy that Gloss and Rosiek seek "is all but dispositive." *Jarkesy*, 603 U.S. at 123.  Gloss and Rosiek do not dispute the well-established proposition that "the payment of money past due under a contract" is "the classic form of *legal* relief."  *Great-W.*, 534 U.S. at 210 (quotation omitted); *see* DOJ Br. 15.  Nor do they defend the district court's misconstruction of their requested relief as "front pay."  JA113-114.  In fact, all parties now appear to agree that the district court erred by labeling as "front pay" the money that Gloss and Rosiek claim was owed to them before any alleged whistleblowing and retaliation.  *See* Comcast Br. 38-44; DOJ Br. 16-17; JA35-36 (Gloss and Rosiek denying claim for "front pay").  Instead, Gloss and Rosiek point to the equitable remedies authorized under SOX—remedies that, again, Gloss and Rosiek do not themselves seek.  Because this is an as-applied challenge, not a facial attack on the SOX scheme, that move does not work.

a.  Gloss and Rosiek observe (at 10-11) that SOX *authorizes* equitable remedies, such as reinstatement and backpay, that are "intended to restore employees harmed by unlawful retaliation."  Indeed, their brief is carefully

10

worded to refer only to the general "remedies available under" SOX (at 10) and "authorized by" SOX (at 8, 11, 12, 13, 17, 19, 22, 23, 25, 26, 31, 34); they do not mention the actual remedies they have requested in their administrative complaint.[1]

Whatever remedies SOX authorizes in the abstract have no bearing on whether Comcast has a jury-trial right under the Seventh Amendment on the actual claims brought and remedy sought by Gloss and Rosiek. Courts look to the specific relief the plaintiff seeks in the underlying administrative action, not the hypothetical relief that a different plaintiff might seek in a different action. *See, e.g.*, *Terry*, 494 U.S. at 570 ("In this case, the only remedy sought is a request for compensatory damages."); *City of Monterey* v. *Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710 (1999) ("Here Del Monte Dunes sought legal relief."). Gloss and Rosiek resist that common-sense point (at 13), citing *Granfinanciera*, 492 U.S. at 42, for the notion that courts evaluate only

---

[1]  If the requested remedy (payment of the incentive pay due under the alleged contract) is outside SOX's scope, the ALJ should have dismissed this action, as Comcast contended. Comcast MTD Opp. 13 (Dkt. 28). But DOL has insisted on maintaining jurisdiction over a contract fight, including authorizing the extensive discovery that Gloss and Rosiek highlight (at 7-8). Having asserted that jurisdiction, the agency has walked into a Seventh Amendment violation that only this Court can rectify. *See infra* at 22-23.

11

the generalized "purpose of the remedy Congress authorized" without regard to the specific remedy sought in the action. But *Granfinanciera* never said that; in fact, it held the opposite. The Supreme Court stated that "we examine the remedy sought" by the plaintiff, *Granfinanciera*, 492 U.S. at 42, and held that the specific "relief [the plaintiff] seeks" was legal and not equitable, *id.* at 47.

Here, Gloss and Rosiek seek only damages for breach of an alleged oral contract. Such "compensatory damages" to recover "wages and benefits they would have received" had Comcast not breached the alleged oral contract are "legal." *Terry*, 494 U.S. at 570-571; *see Scott* v. *Neely*, 140 U.S. 106, 110 (1891) (noting that a "money judgment for breach of a simple contract" is a legal remedy). Gloss and Rosiek have disavowed the equitable remedies that they now emphasize are available under SOX: "reinstatement and standard back pay (or front pay)." JA35. Whatever equitable remedies *other* SOX whistleblowers may seek, Gloss and Rosiek do not seek those remedies here.

b.      Next, Gloss and Rosiek repeat (at 16-17) the district court's error of assuming that "punitive" damages are the sole form of legal relief. Comcast's opening brief already explained why that is wrong (at 17, 30-32), and Gloss and Rosiek do not engage with any of those arguments. Instead,

12

they merely assert (at 16-17) that because the specific relief at issue in *Jarkesy* was a "punitive civil penalt[y]," *Jarkesy*'s reasoning applies only to punitive damages. In Gloss and Rosiek's view, monetary relief is either "punitive" (and thus legal) or compensatory and designed to "make the employee whole" for his alleged loss (and thus equitable). *Id.* at 19.

That dichotomy is wrong. Both "compensatory and punitive damages" are forms of legal relief. *Curtis* v. *Loether*, 415 U.S. 189, 197 (1974). Although "[c]ompensatory damages, by their very nature, are awarded to make a plaintiff whole," that is the traditional legal remedy for breach of contract. *Middle E. Banking Co.* v. *State St. Bank Int'l*, 821 F.2d 897, 902 (2d Cir. 1987); *see* Restatement (Second) of Contracts § 347 cmt. a (1981) ("benefit of [the] bargain" damages make the plaintiff whole by "put[ting] him in as good a position as he would have been in had the contract been performed"); *C & O Motors, Inc.* v. *Gen. Motors Corp.*, 323 Fed. Appx. 193, 197-198 (4th Cir. 2009) ("A plaintiff in a contract action is only entitled to be put in the same economic position that it would have been in had the contract not been breached," *i.e.*, to "make the injured party whole for losses actually suffered."); *Overwell Harvest, Ltd.* v. *Trading Techs. Int'l, Inc.*, 114 F.4th 852, 861 (7th Cir. 2024) ("The compensatory damages sought here were intended to make [the

13

plaintiff] whole for the money allegedly lost due to [the defendant's] misconduct. Such actual damages, along with punitive damages, are the traditional forms of legal relief.").

c.    Gloss and Rosiek also try a narrower strategy, pegging this case as "equitable restitution" rather than legal damages. Despite Comcast's extensive rebuttal of the district court's similar misunderstanding, *see* Comcast Br. 32-38, Gloss and Rosiek devote a single sentence to the point. They assert (at 26) that "[m]onetary relief remains equitable when it is awarded to restore a plaintiff to the position he or she would have occupied absent unlawful conduct."

Not so. True, "the word 'restitution' is a term of art that has frequently proved confusing," Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. c (2011), and it is "subject to professional misunderstanding on every level," Doug Rendleman, *Measurement of Restitution: Coordinating Restitution with Compensatory Damages and Punitive Damages*, 68 Wash. & Lee L. Rev. 973, 977 (2011). But the simplest way to spot restitutionary relief is to ask if the requested relief involves "giving back" or "giving up": if the plaintiff wants the defendant to "give back" something it wrongfully took from plaintiff or to "give up" profits it gained at

14

plaintiff's expense, then it is restitutionary relief. *Measurement of Restitution*, 68 Wash. & Lee L. Rev. at 981; *see Tull* v. *United States*, 481 U.S. 412, 424 (1987) (defining restitution as either "disgorgement of improper profits" or requiring the "return of [property] which rightfully belongs to the purchaser"); Dan B. Dobbs, Law of Remedies, § 12.3(1), at Vol. III p. 55 (1993) ("[R]estitution theoretically 'restores' the plaintiff only by returning consideration he gave under the contract, or . . . forcing the defendant to disgorge unjust profits.").

Here, Gloss and Rosiek do not ask that Comcast "give back" anything it improperly took from them or "give up" profits it improperly made at their expense. Instead, they want Comcast to "be ordered to pay Mr. Gloss, Mr. Rosiek, and each of [their] BluVector teammates their respective portions of the incentive compensation liability" supposedly owed to them. JA59. That is the definition of benefit-of-the-bargain damages—*i.e.*, "damages [that] reflect what the injured party would have received had the contract been performed." *In re Ellison*, 296 F.3d 266, 273 (4th Cir. 2002). At a minimum, even if Gloss and Rosiek's requested relief could be characterized as restitution, it would be restitution at law—not equity. *See* Comcast Br. 35-38. Gloss and Rosiek never respond to that point.

15

### B. Gloss And Rosiek Misapprehend The Public-Rights Doctrine.

Because Gloss's and Rosiek's claims and requested relief are legal, the only way out of a constitutional violation is through the public-rights doctrine. That doctrine is a narrow exception to the Seventh Amendment that encompasses claims that "historically could have been determined exclusively by the executive and legislative branches." *Jarkesy*, 603 U.S. at 128 (quotation and brackets omitted). As DOJ acknowledges (at 8), Gloss's and Rosiek's contract claims do not implicate "public rights that can be decided without a jury." Their claim to "recover contract damages" for alleged non-payment of incentive compensation is "'one of private right, that is' a claim determining 'the liability of one individual to another' under the common law." *Id.* at 17 (quoting *N. Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50, 71-72 (1982)). Gloss and Rosiek's scattershot counterarguments are meritless.

1. In Gloss and Rosiek's view (at 17), the narrow public-rights doctrine is a broad catch-all that allows Congress to whisk any claim into an administrative proceeding simply by "enact[ing] [a] new statutory right[] to enforce a regulatory scheme." The Supreme Court rejected that argument in *Granfinanciera* and rejected it again in *Jarkesy*:

> Congress cannot "conjure away the Seventh Amendment by
> mandating that traditional legal claims be . . . taken to an

16

administrative tribunal." Nor does the fact that the [plaintiff's] action "originate[d] in a newly fashioned regulatory scheme" permit Congress to siphon this action away from an Article III court.

*Jarkesy*, 603 U.S. at 135 (quoting *Granfinanciera*, 492 U.S. at 52). The question is whether "the action resembles a traditional legal claim," not whether it has "statutory origins." *Id.*

To support their contention that the public-rights exception swallows every statutory claim that Congress assigns to an administrative tribunal, Gloss and Rosiek rely almost entirely on *Atlas Roofing*. They cite that decision 12 times and call it the "leading decision" on the public-rights doctrine. *See* Intervenor Br. 3, 11, 12, 17, 18, 23, 25, 27, 28, 29, 33. In *Jarkesy*, the Supreme Court rejected the same broad reading of *Atlas Roofing* that Gloss and Rosiek advance, holding that "the public rights exception does not apply automatically whenever Congress assigns a matter to an agency for adjudication." *Jarkesy*, 603 U.S. at 139-140.

Even if *Jarkesy* had not already cabined its scope, *Atlas Roofing* still would not help Gloss and Rosiek. Although endorsing a broad view of agency adjudication, the Supreme Court explained in *Atlas Roofing* that "where the action involves rights and remedies recognized at common law, it must preserve to parties their right to a jury trial." 430 U.S. at 455. The Court even

17

cited as an example "suits for damages for breach of contract." *Id.* at 459. The Occupational Safety and Health Act at issue in *Atlas Roofing* fell within the public-rights doctrine because it did not "enable the Federal Government to bring or adjudicate claims that traced their ancestry to the common law"; rather, the statute "resembled a detailed building code" and created claims that "were 'unknown to the common law.'" *Jarkesy*, 603 U.S. at 136-138 (quoting *Atlas Roofing*, 430 U.S. at 461). By contrast, like the fraud action in *Jarkesy*, "law courts have dealt with [contract] actions since before the founding." *Id.* at 140. Indeed, some of the Supreme Court's earliest decisions were breach-of-contract cases. *See, e.g.*, *Douglass & Mandeville* v. *McAllister*, 7 U.S. 298, 300 (1806); *Shepherd* v. *Hampton*, 16 U.S. 200, 204 (1818).

The two other cases Gloss and Rosiek cite (at 24) do not support their position either. First, *Oil States Energy Services, LLC* v. *Greene's Energy Group, LLC*, involved an administrative claim to challenge the "grant of a patent," one of the "long recognized" categories of "public rights." 584 U.S. 325, 335 (2018); *see Jarkesy*, 603 U.S. at 130 (identifying "patent rights" as one of the "historic categories of adjudications [that] fall within the [public-rights] exception"). Second, Gloss and Rosiek's reliance on *Granfinanciera* is puzzling because the Supreme Court rejected the exact rule they propose,

18

holding that "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency." 492 U.S. at 61.

2.     Gloss and Rosiek then set up and knock down a strawman. They assert that "Comcast's argument rests on the premise that the public-rights doctrine applies only when the government is a party to the proceeding," and then contend that "[t]he Supreme Court has repeatedly rejected that limitation." Intervenor Br. 27-28 (citing *CFTC* v. *Schor*, 478 U.S. 833 (1986), *Atlas Roofing*, and *Oil States*). Comcast actually argued (*see* Comcast Br. 44-45) that under *Jarkesy*, the question is whether the "substance of the action" is "in the nature of an action at common law," irrespective of "who brings it." *Jarkesy*, 603 U.S. at 128, 134-135. As to that question, Comcast's point was simply that *Jarkesy* involved a government action for civil enforcement and thus had no occasion to catalog which private suits are legal in nature.

As discussed above (at 17-18), *Atlas Roofing* and *Oil States* do not apply here. And *Schor* is even further afield. There, the plaintiff brought an administrative proceeding against his broker and then consented to the adjudication of the broker's state-law counterclaim in that administrative proceeding. *Schor*, 478 U.S. at 838. After the ALJ ruled against the plaintiff

19

on the counterclaim, the plaintiff belatedly "challenged the CFTC's statutory authority to adjudicate [the] counterclaim." *Id.* In rejecting any "structural concern implicated by the CFTC's adjudication of the counterclaims against him," the Supreme Court "[l]ean[ed] heavily on the importance of [the plaintiff's] consent." *Wellness Int'l Network, Ltd.* v. *Sharif*, 575 U.S. 665, 676 (2015) (discussing *Schor*). Here, Comcast did not commence the administrative proceeding but rather brought this action to stop it. *See Intuit, Inc.* v. *FTC*, 170 F.4th 411, 424 (5th Cir. 2026) ("*Schor* is inapplicable because Intuit did not file claims before the Commission, and Intuit has consistently maintained its right to an Article III adjudication.").

3.     Gloss and Rosiek next turn to SOX's statutory purpose, observing (at 31) that SOX's "whistleblower provisions ... encourage employees of public companies to report violations that threaten the transparency and accuracy of financial reporting."[2] But that generalized statutory purpose does not support Gloss and Rosiek's contention (at 32) that litigating all nominal

---

[2]    Comcast agrees that the "accuracy of financial reporting" is important. Intervenor Br. 31. That unassailable principle is one of the (many) reasons that Gloss's and Rosiek's whistleblower claims are frivolous on their face. Their alleged suggestion that Comcast report hundreds of millions of dollars in implausible liabilities based on a supposed oral contract would mislead stockholders and render Comcast's financial statements inaccurate.

SOX whistleblower claims in-house at DOL—rather than in court—is "integral" to "federal securities regulation." As explained in Comcast's opening brief (at 46), the majority in *Jarkesy* rejected the dissent's assertion that the public-rights exception should apply whenever the claim is "closely integrated into a public regulatory scheme." 603 U.S. at 185 (Sotomayor, J., dissenting) (quotation omitted). Moreover, Gloss and Rosiek have no response to the point that Congress granted whistleblowers the option to bring their SOX whistleblower claim in an "appropriate district court of the United States," 18 U.S.C. § 1514A(b)(1)(B), which "demonstrat[es] that jury trials [are] not generally 'incompatible' with the overall regime," *Jarkesy*, 603 U.S. at 134 (quoting *Granfinanciera*, 492 U.S. at 61-62); *see* DOJ Br. 18 (same).

4.    Lastly, Gloss and Rosiek resort to policy. They assert (at 29) that recognizing Comcast's jury-trial right on what they concede is "not a traditional SOX claim," JA35, would lead to mandatory jury trials for "every retaliation claim," causing "sweeping disruption of longstanding administrative practice." There is no risk of disruption. As DOJ acknowledges (at 18-20), a judgment in favor of Comcast does not threaten the SOX whistleblower scheme. It is the "unique facts of this case" that implicate Comcast's Seventh Amendment jury-trial right. DOJ Br. 9. Gloss and Rosiek

21

do not seek equitable relief—reinstatement or (at most) front pay for the period after constructive termination. *Id.* at 15-17, 20. Instead, they allege that Comcast failed to "pay them as promised" before any alleged whistleblowing or any alleged retaliation, and they seek "contract damages" for that pre-retaliation harm. *Id.* at 4, 14, 17. That contract claim "sounds in the common law, and has only a threadbare connection to the federal securities laws" based on the allegation that "Comcast's failure to pay them derivatively violated the securities laws." *Id.* at 8, 15. As a result, reversal here "would simply recognize that a defendant facing a common-law breach of contract suit for failing to make promised payments 'has the right to be tried by a jury.'" *Id.* at 9 (quoting *Jarkesy*, 603 U.S. at 140).

## C. Despite DOJ's Agreement That The District Court Erred, This Appeal Remains Live.

To be clear, although DOJ agrees (at 18) that the district court erred and that "[c]ontinued adjudication of this case" before an ALJ "is unwarranted and unconstitutional," this appeal is not moot. Comcast is still suffering the unconstitutional harm: the ALJ has not dismissed Gloss and Rosiek's administrative complaint. Because the administrative proceeding remains pending, the district court must still issue an order granting the relief requested in Comcast's complaint: (i) declaring that "[t]he ALJ Proceeding

22

against Comcast unlawfully deprives Comcast of its constitutional right to trial by jury," and (ii) "enjoining Defendants from subjecting Comcast to unconstitutionally structured administrative proceedings." JA22. Unless and until DOL acts to dismiss the pending proceedings, this Court's intervention remains warranted. *See Louise Trauma Ctr. LLC* v. *U.S. Citizenship & Immigr. Servs.*, 147 F.4th 495, 501 (4th Cir. 2025) (holding that FOIA "case is not moot because USCIS has yet to produce many of the complete records [plaintiff] requested").

## II.    GLOSS AND ROSIEK DO NOT RESPOND TO COMCAST'S REMOVAL-PROTECTION CLAIM.

Both Comcast and DOJ agree that if this Court reverses on Seventh Amendment grounds, it need not consider Comcast's alternative claim that DOL ALJs are unconstitutionally protected from removal. *See* Comcast Br. 5; DOJ Br. 21. For their part, Gloss and Rosiek do not respond to Comcast's argument that the ALJ proceeding was unconstitutionally structured because the ALJ was improperly insulated from Presidential removal. The ALJ's unconstitutional insulation from removal is an alternative ground for reversal, for the reasons given in Comcast's opening brief. Comcast Br. 50-60. But for all the reasons given above, the most straightforward resolution of this case is

23

to hold that this disguised contract claim cannot proceed before an agency, even if dressed up in whistleblower garb.

## CONCLUSION

For the foregoing reasons, this Court should reverse.

Respectfully submitted,

/s/ Jeffrey B. Wall

| | |
|---|---|
| Sarah E. Bouchard | Jeffrey B. Wall |
| David C. Dziengowski | Morgan L. Ratner |
| Morgan, Lewis & Bockius LLP | Sullivan & Cromwell LLP |
| 2222 Market Street | 1700 New York Avenue, N.W. |
| Philadelphia, PA 19103 | Suite 700 |
| (215) 963-5000 | Washington, DC 20006 |
| sarah.bouchard@morganlewis.com | (202) 956-7500 |
| david.dziengowski@morganlewis.com | wallj@sullcrom.com |
| | ratnerm@sullcrom.com |

Michael E. Kenneally
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-3000
michael.kenneally@morganlewis.com

Jacob E. Cohen
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
cohenja@sullcrom.com

*Counsel for Appellants Comcast Corporation and*
*Comcast Cable Communications Management, LLC*

APRIL 21, 2026

24

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,065 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14-point Century Expanded BT font.

/s/ Jeffrey B. Wall
Jeffrey B. Wall

Dated:  April 21, 2026